UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    CYNTHIA L. NESTOR                      Case No. 05-37795-dof
    a/k/a CYNDI NESTOR,                   Chapter 7 Proceeding
                                                        Hon. Daniel S. Opperman

              Debtor.
_____/

UNITED STATES INDEMNITY AND
CASUALTY COMPANY, LTD.,

          Plaintiff,

v.                                                           Adversary Proceeding Case No. 06-3038-dof

CYNTHIA L. NESTOR,
a/k/a CYNDI NESTOR,

          Defendant.
_____/

## OPINION REGARDING DEFENDANT'S MOTION TO DISMISS

Defendant, Cynthia Nestor, n/k/a Cynthia Broad ("Ms. Broad"), seeks dismissal of this adversary proceeding pursuant to an agreement with Plaintiff, United States Indemnity and Casualty Company, Ltd. ("USI&C"). Ms. Broad also seeks recovery of attorney fees and costs as a result of the alleged breach of this agreement by USI&C. Initially, USI&C argued that Ms. Broad did not cooperate with it and was therefore not entitled to dismissal of this action. At the April 22, 2008, evidentiary hearing on this matter, USI&C also argued that it did not receive a signed copy of the agreement. USI&C denies that Ms. Broad is entitled to the award of any costs and attorney fees. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

Findings of Fact

USI&C is a surety with offices in the State of Michigan. Ms. Broad is an individual residing in the State of Michigan. Ms. Broad filed a petition seeking relief under Chapter 7 of Title 11 of the United States Code with this Court on October 15, 2005.

Ms. Broad was the owner, officer and sole shareholder of a company named CBN Steel Construction, Inc. ("CBN"). Per the General Agreement of Indemnity attached to the Complaint in this matter, Ms. Broad, as an individual, agreed that in exchange for USI&C's issuance of surety bonds on behalf of CBN, she would:

- A indemnify, defend and hold USI&C harmless from any and all claims, damages, demands, etc. arising out of or related to any bonds executed and/or procured by USI&C for or on behalf of CBN; and

- B. cooperate with USI&C, including providing access to books, records, accounts, bank records, contracts, materials, and equipment.

USI&C issued several bonds for and on behalf of CBN in reliance on the General Agreement of Indemnity signed by Ms. Broad. The bonds issued by USI&C included:

- a) MTP-2208 Phase II
  Terminal Building Expansion
  McNamara Terminal, Northwest World Getaway
  Romulus, Michigan
  (the "Northwest" Project)

- b) University of Michigan
  School of Public Health
  109 South Observatory Drive
  Ann Arbor, Michigan
  (the "U of M" Project)

- c) Ironworkers Fringe Benefits Surety Bond
  (the "Fringe Benefit" Bond)

CBN was involved in several construction projects, including the Northwest and U of M

2

Projects. Walbridge Aldinger Company ("Walbridge") was the general contractor for both projects, and CBN was a subcontractor of Walbridge. Throughout CBN's involvement on the projects, CBN received money for work performed by its subcontractors on the projects. As the officer and sole officer of CBN, Ms. Broad was the individual responsible for collecting funds and making payment to CBN subcontractors.

CBN failed to pay several subcontractors, leaving these entities to turn to USI&C for payment. Subsequent to CBN's failure to pay, Ms. Broad filed a voluntary Chapter 7 petition. USI&C expended over $500,000 to various subcontractors of CBN as a result of claims made against the payment bond. In addition, USI&C expended in excess of $300,000 to complete CBN's work on the U of M project as a result of a demand made by Walbridge on the performance bond issued by USI&C.

USI&C filed a Complaint commencing the instant adversary proceeding against Ms. Broad on January 27, 2006. From January, 2006, through August, 2006, USI&C and Ms. Broad discussed methods to resolve not only this adversary proceeding but the various court actions regarding the bonds issued by USI&C. On August 9, 2006, USI&C sent a letter to Ms. Broad which was subsequently admitted at the April 22, 2008, evidentiary hearing as Exhibit B. The August 9, 2006, letter states in part:

> The following are those matters United States Indemnity and Casualty Company (USI&C) will require of Cynthia Broad Nestor. USI&C stipulates to suspend Adversary Proceeding pursuant to 11 USC §305, and to the dismissal with prejudice of Adversary Proceeding 120 days from the date of this agreement.

The August 9, 2006, letter continues to require Ms. Broad to provide information and documents in regard to the state court lawsuits. The August 9, 2006, letter concludes as follows:

3

> This is a non-exclusive list of matters USI&C will require of Ms. Nestor. If there are other issues or concerns which are to be addressed by USI&C, USI&C will require that Ms. Nestor cooperate with USI&C to resolve those matters as well.
>
> If Ms. Nestor will agree to these terms, please have her sign a copy of this letter below and return same to this office.

Exhibit B is signed by Cynthia Broad Nestor with a date of 8/14/06.

On September 25, 2006, the parties filed a Stipulation to Suspend Adversary Proceeding Pursuant to 11 U.S.C. § 305. Paragraph 3 of the stipulation states:

> That in the interest of saving time and money, the parties have agreed to suspend the above-captioned matter pending the Defendant's cooperation with Plaintiff and the ultimate resolution of its other actions.

(Docket #17)

An Order suspending this adversary proceeding was entered on September 27, 2006. This adversary proceeding remained suspended with the parties reporting the progress at status conferences in December, 2006, and October, 2007.

In October, 2007, Ms. Broad, through counsel, renewed her request to direct USI&C to dismiss this adversary proceeding. USI&C responded by informing Ms. Broad that since she had not provided certain information to USI&C, she had not cooperated with USI&C. On November 28, 2007, USI&C identified those documents Ms. Broad should have produced to it. (Exhibit 1)

By December, 2007, Ms. Broad filed a Motion to Dismiss this adversary proceeding. In response, USI&C filed a brief arguing, among other things, that Ms. Broad had not cooperated with it in connection with the bond claims. In its brief, USI&C stated:

> USI&C then commenced an adversary proceeding seeking relief against Nestor on January 27, 2006. Thereafter, USI&C and Nestor entered into an agreement whereby USI&C would suspend the adversary proceeding contingent upon Nestor providing USI&C with certain cooperation. (Exhibit 2)
>
> . . .

Pursuant to the agreement, these proceedings were suspended.

(Pl.'s Br. at 4-5 (Docket #32))

In its brief, USI&C referenced Exhibit B. At the preliminary oral argument on Ms. Broad's Motion to Dismiss, held on March 12, 2008, USI&C continued its argument that Ms. Broad failed to cooperate with it. No reference or argument was made as to the failure of Ms. Broad to sign the agreement or deliver it to USI&C.

At the April 22, 2008, evidentiary hearing, Ms. Broad testified as follows in regard to Exhibit B:

> Q. . . . [t]ell me what the second and third pages are, please. [Page 20 of transcript of April 22, 2008, hearing, (Docket #40) (hereinafter referred to as T-____)
>
> A. The second and third pages are the agreement that we came to and I signed and sent back to them.
> Q. And when did you sign it?
> A. I think it was August – August 9th. There's a date on there. [T-20]
>
> . . .
>
> Q. And so tell me you said that you signed this document that's labeled Exhibit B, is that correct?
> A. Correct.
> Q. And did you send it – did you give it to USI&C?
> A. I mailed it to them. [T-20]
>
> . . .
>
> Q. Did you date it at that time?
> A. Yes, I did, 8-14-06. [T-21]
>
> . . .
>
> Q. Now Ms. Broad after you sent this settlement agreement to USI&C, did you ever have an occasion to discuss with Mr. McNish or anybody else at USI&C the fact that it had been signed and sent back?
> A. Yes. I know for sure in August of 2007 when I brought up the fact that it had

5

| | |
|---|---|
| | not been dismissed, that he agreed with me that it should be dismissed and that he needed to talk to Jerry Richter. |
| Q. | So did anyone at USI&C ever deny that they – that they had received it back from you? |
| A. | Never. This is the first time I've heard that. |
| Q. | Would you please take a look at Exhibit C and tell me if you can identify that document, please? |
| A. | Yes. This is an affidavit that I signed for the bonding company. |
| Q. | And is that – is the affidavit dated? |
| A. | It is. |
| Q. | And what is the date of that? |
| A. | The 16th day of August. [T-23 - T-24] |

. . .

| | |
|---|---|
| Q. | And did you send an original signature to USI&C? |
| A. | I did. [T-25] |

. . .

| | |
|---|---|
| A. | Yes. And actually I sent this affidavit to them with the agreement because they were both signed on the same day and they were in the same envelope. |
| Q. | But the – the affidavit is dated two days later, is that right? |
| A. | I don't have the – what day did I sign the other one, the 14th? |
| Q. | I think the 14th. |
| A. | Okay. Yes. [T-25] |

. . .

| | |
|---|---|
| Q. | So then on or after the 16th you mailed it to them, is that what you're saying? |
| A. | Right. I believe it was actually on the 16th on the way back from the bank. [T-26] |

. . .

On cross-examination, Ms. Broad testified as follows in regard to the agreement:

| | |
|---|---|
| Q. | Now you've testified that the – this letter was signed by you on the 14th of August of 2006. And then along with that letter you mailed Exhibit C which is an affidavit? |
| A. | Yes. I believe I put them in the same envelope. |
| Q. | Okay. And you believe also that you were coming back from the bank and you put them in an envelope and you deposited them in a – in a mailbox someplace? |
| A. | Yes, at the post office. [T-46] |

6

. . .

>   Q. Did you have a – did you have an address for – for Mr. McNish, or where did you send it?
>   A. I sent it to his office in Troy.
>   Q. Okay. In Troy?
>   A. Uh-huh.
>   Q. Do you know that the McNish Group has – no longer has an office in Troy? Do you know that?
>   A. I'm talking August in 2006.
>   Q. Okay. Did they have an office in Troy in August of 2006?
>   A. Yes. [T-47]

. . .

>   Q. So you had the address in your – in your car?
>   A. I had printed it out on the envelope at my house before I went to the bank and to the post office.
>   Q. All right. And then you had a stamp at the – at the post office, correct?
>   A. I probably had a stamp at home. [T-48]

USI&C called Michelle Graham, the custodian of the files of USI&C, regarding this matter.

Ms. Graham testified as follows in regard to Exhibit B:

>   Q. You're the custodian of files?
>   A. Yes.
>   Q. At USI&C. And what files do you maintain?
>   A. All claims, payment and performance.
>   Q. Okay. What about lawsuits?
>   A. Lawsuits. [T-77]

. . .

>   Q. In the – did you search the – those files for the lawsuits for this Exhibit B?
>   A. Yes.
>   Q. Did you find a signed copy of Exhibit B in your files?
>   A. No. [T-77]

Ms. Broad also testified that she responded to inquiries and requests made by USI&C from August, 2006, until June, 2007, when Mr. McNish requested her to sign another affidavit regarding the Northwest Project. Ms. Broad testified that she refused to sign this affidavit because she had

determined by that time that USI&C had not followed through on the agreement to dismiss this adversary proceeding. Ms. Graham, on behalf of USI&C, testified that USI&C was still missing various documents that it expected Ms. Broad to have, and further testified as to her suspicions why Ms. Broad was not producing these documents.

At the April 22, 2008, hearing, counsel for Ms. Broad estimated the fees and costs incurred by Ms. Broad in connection with the filing of the Motion to Dismiss, as well as the breach of the August, 2006, agreement. In post-hearing briefs, the amount requested by Ms. Broad is $9,796.40.

## Conclusions of Law

Three issues must be decided by this Court: (1) Was there an agreement between USI&C and Ms. Broad? (2) If an agreement did exist, did Ms. Broad cooperate with USI&C? and (3) If an agreement did exist and Ms. Broad cooperated with USI&C, did USI&C breach the agreement and cause damage to Ms. Broad?

### I.
### Did an agreement exist?

USI&C argues that Ms. Broad did not deliver a signed copy of the August 9, 2006, letter. Ms. Broad's testimony is that she signed the agreement, and an affidavit, and then placed these documents in an envelope with proper postage addressed to Mr. McNish at his Troy address. She also testified that she placed the envelope, with the enclosed documents, in a United States Postal Service mailbox. In response, USI&C claims that a signed agreement is not in its files and that the mailing of the documents to Mr. McNish at his Troy address is in contradiction to the terms of the August 9, 2006, letter. In particular, USI&C argues that the letter should have been sent to the Livonia, Michigan address listed on the August 9, 2006, letter.

In examining the August 9, 2006, letter, the Court notes the applicable language is as follows:

> If Ms. Nestor will agree to these terms, please have her sign a copy of this letter below and return same to this office.

The August 9, 2006, letter does not contain specific terms as to the delivery at a specific address, and the August 9, 2006, letter contains two addresses, one located in Livonia, Michigan, the other in Tortola, British Virgin Islands. Moreover, per Ms. Broad's testimony, she also included a signed affidavit in this envelope, which Plaintiff admits receiving and used in support of a motion filed in connection with the bond claims.

The Court concludes that the August 9, 2006, letter agreement did not specifically require delivery to USI&C at a specific address and that the actions of Ms. Broad are sufficient to satisfy the terms of the August 9, 2006, letter. In Michigan, completion of acceptance can be evidenced by placing a properly addressed envelope with requisite postage in a mailbox. In this case, this so-called "mailbox rule" is satisfied by the testimony of Ms. Broad detailed above. *Birznieks v. Cooper*, 405 Mich. App. 319, 275 N.W.2d 221 (1979); *Crawford v. Michigan,* 208 Mich. App. 117, 527 N.W.2d 30 (1994)*; Stacey v. Sankovich*, 19 Mich. App. 688, 173 N.W.2d 225 (1969).

Second, the testimony of Ms. Broad is that she included an affidavit in the same envelope that she sent the letter agreement. USI&C subsequently used this affidavit in Court proceedings. The Court concludes that the affidavit and agreement were received by USI&C, thereby completing Ms. Broad's requisite duties to form a contract. The Court is mindful of the testimony of Ms. Graham. Ms. Graham testified, however, that she could not find the agreement in her files, not that the agreement was never received.

Finally, the Court cannot reconcile USI&C's position that a signed agreement was not received with the actions of the parties, and in particular its actions after August, 2006. As noted

earlier, USI&C on September 25, 2006, filed a stipulation with this Court indicating that the parties "have agreed to suspend the above-captioned matter pending the Defendant's cooperation with Plaintiff." Moreover, counsel for USI&C at no time during the status conferences conducted by this Court informed this Court that Ms. Broad had failed to sign the agreement. Additionally, USI&C's brief filed in December, 2007, references the very agreement that it later claims was never received. The conduct of the parties, therefore, compel this Court to conclude that an agreement was enforceable and effective as of August 14, 2006.

II.
Did Ms. Broad cooperate with USI&C?

The August 14, 2006, agreement required Ms. Broad to cooperate with USI&C in many ways, specifically by providing an affidavit and information to assist USI&C in the bond claims made against it. Ms. Broad claims that she steadfastly honored every request of USI&C and that some of her efforts were handicapped by the closing of the businesses, the moving of various documents, and the volume of documents. USI&C claims otherwise and points to a number of documents that it believes should exist, but were never produced by Ms. Broad.

The Court concludes that Ms. Broad did cooperate with USI&C to the extent she could do so. Ms. Broad credibly testified that she did produce information and signed an affidavit, which USI&C was able to use in the various claims and actions involving the claims against it. Although informal requests were made by USI&C for Ms. Broad to produce documents or otherwise provide information, USI&C did not attempt to list these deficiencies until November 28, 2007. This letter was sent over one year after the August, 2006 agreement and is clearly not within the 120 day time frame contemplated by the parties' agreement. USI&C's arguments that Ms. Broad did not supply certain information may be accurate, but there is nothing in the record showing that this information was available to Ms. Broad and that she withheld such information. Instead, the Court finds and

10

concludes that the change of locations, as well as the amount of information available for major construction projects such as the ones in question, are such that Ms. Broad simply did the best she could under the circumstances.

III.
Did USI&C breach the agreement and cause damages to Ms. Broad?

The August 9, 2006, agreement signed by Ms. Broad on August 14, 2006, clearly states two requirements. USI&C agreed to (1) stipulate to suspend the adversary proceeding and (2) subsequently dismiss with prejudice the adversary proceeding 120 days from the date of the agreement. The stipulation and order of the parties suspending the adversary proceeding was timely filed. USI&C did not breach the first requirement of the agreement. A review of the Court record, however, indicates that USI&C did not dismiss this adversary proceeding after 120 days from August 14, 2006. The Court finds and concludes that USI&C did breach the second requirement of the parties' agreement.

Accordingly, USI&C has damaged Ms. Broad. The proper measure of these damages is the costs and expenses incurred by Ms. Broad after December 31, 2006.

The Court has had an opportunity to review Exhibit G admitted at the April 22, 2008, hearing, as well as the revised fee calculations submitted by Ms. Broad on April 29, 2008. The Court concludes that the fees and costs incurred by her as a result of the breach of the agreement by USI&C is $9,361.40.

Ms. Broad requests damages in the amount of $9,796.40, which constitutes the attorney fees and costs incurred by her beginning on November 8, 2007. At the April 22, 2008, hearing, Exhibits G and H were admitted supporting attorney fees and costs incurred up to April 11, 2008. Ms. Broad supplemented her request for attorney fees and costs to include services rendered in connection with the post-trial briefs in this action.

At the April 22, 2008, hearing, a few entries in Exhibit G were questioned by USI&C. The Court has independently reviewed Exhibit G, as well as Exhibits A and B attached to the post-trial briefs of Ms. Broad. The Court has determined that a portion of the entry dated December 10, 2007, does not constitute damages in this action, and that a $72.50 adjustment is appropriate. USI&C's observations and arguments that the December 14, 2007, entry is inappropriate are rejected, and those fees will be allowed. As to the January 14, 2008, February 14, 2008, and March 6, 2008, entries, the Court concludes that these entries are not related to the services rendered in connection with the agreement and, therefore, do not constitute an appropriate measure of damages. Accordingly, the Court concludes that $435.00 of the requested fees are not related to USI&C's breach of the agreement and, therefore, deducts $435.00 from the $9,796.40 requested by Ms. Broad, resulting in damages of $9,361.40.

A separate Order will enter.

**Signed on June 27, 2008**

                                                                       **/s/ Daniel S. Opperman**
                                                                       **Daniel S. Opperman**
                                                                       **United States Bankruptcy Judge**